**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION**

| | |
|---|---|
| OPPENHEIMER & CO. INC.,<br><br>Plaintiff,<br><br>v.<br><br>CYNTHIA RICHARDSON,<br>KIMBERLY MURRAY, and<br>ALEXANDRA ELDRIDGE FARMER,<br><br>Defendants. | Case No. 5:25-cv-2 |

## COMPLAINT

Oppenheimer & Co. Inc. ("Oppenheimer") hereby files this Complaint seeking certain declaratory judgments and injunctive relief against Defendants Cynthia Richardson, Kimberly Murray, and Alexandra Eldridge Farmer (together, "Defendants"). Oppenheimer alleges as follows:

## NATURE OF THE CASE

1.      Oppenheimer brings this action to resolve the parties' dispute over whether Oppenheimer agreed to arbitrate claims Defendants have or could have brought in the Financial Industry Regulatory Authority ("FINRA") arbitration Defendants filed against Oppenheimer (FINRA Arb. No. 24-02132 (the "FINRA Arbitration")), which is pending in Charlotte, North Carolina.

2.      Because Oppenheimer has not agreed to arbitrate Defendants' disputes and because Defendants are not, and have never been, "customers" of Oppenheimer such that Oppenheimer would be required to arbitrate Defendants' claims under FINRA's Rules, Oppenheimer seeks a

declaration that Oppenheimer has no obligation to arbitrate any and all claims Defendants have or could have brought in the FINRA Arbitration.

3. Oppenheimer further seeks to enjoin Defendants from proceeding with their claims in the FINRA Arbitration to avoid the irreparable harm that would result if Oppenheimer is forced to arbitrate disputes it never agreed to arbitrate.

4. Oppenheimer also brings this action to resolve the parties' disputes over: (a) Ms. Richardson's and Ms. Murray's standing to pursue claims on behalf of deceased individuals; (b) whether the claims Defendants have asserted in the FINRA Arbitration are barred by applicable statutes of limitations; (c) whether there is any private right of action allowing Defendants to pursue the claims for violations of FINRA Rules that they have asserted in the FINRA Arbitration; and (d) whether the Defendants and Oppenheimer are parties to any contract. Because Oppenheimer has not agreed to arbitrate with Defendants, these questions are properly before the Court, as opposed to the arbitrators in the FINRA Arbitration.

5. In the FINRA Arbitration, Ms. Richardson and Ms. Murray appear to pursue claims against Oppenheimer as representatives of certain deceased individuals. Oppenheimer seeks declarations that, because they are not the personal representatives of any decedent's estate, neither Ms. Richardson nor Ms. Murray has standing to pursue such claims, and permanent injunctions barring each of Ms. Richardson and Ms. Murray from pursuing such decedents' claims against Oppenheimer, in any forum. Oppenheimer also seeks declarations that such decedents' claims are also barred by the one-year-from-death statute of limitation applicable to claims that survive death.

6. Oppenheimer also seeks a declaration that causes of action arising from Defendants' investments in an entity called Horizon Private Equity III LLC ("Horizon"), including many of those that they assert in the FINRA Arbitration, are barred by applicable statutes of

limitations, even accounting for any tolling doctrines. In the FINRA Arbitration, Defendants allege that they discovered their claims in August 2021. They commenced the FINRA Arbitration in October 2024, more than three years later. Accordingly, all causes of action that are subject to a three-year or shorter statutes of limitation are time-barred, including those that Defendants assert in the FINRA Arbitration for breach of fiduciary duty, breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of North Carolina Blue Sky Laws. Oppenheimer further seeks a permanent injunction barring Defendants from pursuing against Oppenheimer, in any forum, any causes of action arising from their Horizon investments to which a three-year or shorter statute of limitations applies, because the statutes of limitation have run on all such claims.

7.      In the FINRA Arbitration, Defendants also assert causes of action purportedly based on Oppenheimer's alleged violations of FINRA Rules. Oppenheimer seeks a declaration that FINRA Rules do not provide Defendants with a private right of action against Oppenheimer. Oppenheimer further seeks a permanent injunction barring Defendants from pursuing such supposed causes of action under FINRA Rules.

8.      Finally, in the FINRA Arbitration, Defendants also assert claims for breach of contract and breach of the implied covenant of good faith and fair dealing. But Oppenheimer has never entered into any contract with any of the Defendants. Oppenheimer seeks a declaration that Oppenheimer is not a party to any contract with any Defendant and, therefore, Defendants have no standing to pursue claims against Oppenheimer for breach of contract or breach of the implied covenant of good faith and fair dealing.

9.      In an effort to avoid wasting the parties' and the Court's time and resources, prior to filing this action, counsel for Oppenheimer conferred with counsel for Defendants in the

3

underlying FINRA Arbitration regarding Defendants' willingness to withdraw their claims in the FINRA Arbitration. Defendants have not agreed to withdraw their claims in the FINRA Arbitration.

<h3 style="text-align:center">PARTIES</h3>

10.     Oppenheimer is a New York corporation with its principal place of business and headquarters in New York, New York. Oppenheimer is a broker-dealer and a member of FINRA.

11.     Upon information and belief, Cynthia Richardson is a citizen of and domiciled in Grassy Creek, Ashe County, North Carolina.

12.     Upon information and belief, Kimberly Murray is a citizen of and domiciled in Hillsborough, Orange County, North Carolina.

13.     Upon information and belief, Alexandra Eldridge Farmer is a citizen of and domiciled in Mount Airy, Surry County, North Carolina.

<h3 style="text-align:center">JURISDICTION AND VENUE</h3>

14.     The Court has original and subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and no Defendant is a citizen of the same state as Oppenheimer.

15.     The Court has personal jurisdiction over Defendants because, upon information and belief, they are citizens of North Carolina.

16.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) because Ms. Richardson resides within this Judicial District and all Defendants reside in North Carolina. In addition, Oppenheimer's claims arise from Defendants' commencing the FINRA Arbitration against Oppenheimer in Charlotte, North Carolina, which is within this judicial district.

4

# FACTS

## A.     The FINRA Arbitration.

17.     On or about October 3, 2024, Defendants (among other claimants) filed a Statement of Claim with FINRA (the "SOC"), initiating the FINRA Arbitration.  A copy of the SOC is attached hereto as <u>Exhibit A</u> (redacted of information related to claimants who are not Defendants in this case).

18.     In the SOC, Defendants each allege that they invested in, or inherited investments in Horizon.

19.     Defendants allege that Horizon was a Ponzi scheme orchestrated by John Woods.

20.     John Woods was an Oppenheimer employee from 1991 to 2016.

21.     John Woods is not a party to the FINRA Arbitration.

22.     Oppenheimer is the only Respondent in the FINRA Arbitration.

23.     Defendants allege that they (collectively with claimants who are not Defendants here) "lost over $2 million in principal alone."  SOC at 2.

24.     In the FINRA Arbitration, each Defendant asserts claims against Oppenheimer for: **(1)** violations of FINRA's supervision rules (SOC at 11-18); **(2)** violation of FINRA Rule 2010 to "observe high standards of commercial honor and just and equitable principles of trade" (SOC at 18-19); **(3)** breach of fiduciary duty (SOC at 19); **(4)** "respondeat superior/agency by estoppel" for "frauds, concealment, and other misconduct" allegedly committed by Woods (SOC at 19-20); **(5)** violations of North Carolina's Racketeer Influenced and Corrupt Organizations Act ("RICO") (SOC at 11); **(6)** violations of Georgia's RICO Act (SOC at 11); **(7)** violations of North Carolina Blue Sky Laws (SOC at _); **(8)** breach of contract (SOC at 11); and **(9)** breach of the implied covenant of good faith and fair dealing (SOC at 11).

25.     Defendants allege in the FINRA SOC that:

> Horizon investors did not learn of Woods'[s] fraud or their catastrophic financial losses until after ***August 20, 2021***, when the Securities & Exchange Commission ("SEC") filed an emergency action in the United States District Court for the Northern District of Georgia against John Woods, Horizon Private Equity, and Southport Capital. According to the SEC, the Horizon Private Equity fund was actually a $110 million Ponzi scheme and Claimants and other investors have lost their entire principal investments.

SOC at 7-8 (citing *Securities and Exchange Commission v. John J. Woods, et al.*, No. 1:21-cv-03412 (N.D. Ga.)).

**B.    FINRA Rule 12200.**

26.     In the SOC, Defendants conclusorily allege that they were "customers" of Oppenheimer as that term is used in FINRA Rule 12200, which governs the arbitrability of claims under FINRA's Code of Arbitration Procedure for Customer Disputes (the "FINRA Rules"). *See* SOC at 9.

27.     FINRA Rule 12200 states:

Parties must arbitrate a dispute under the Code if:

- Arbitration under the Code is either:

   (1) Required by a written agreement, or

   (2) Requested by the customer;

- The dispute is between a customer and a member or associated person of a member; and

- The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.[1]

---

[1] FINRA Rule 12200 (Arbitration Under an Arbitration Agreement or the Rules of FINRA), *available at* https://www.finra.org/rules-guidance/rulebooks/finra-rules/12200.

6

28.     Under FINRA Rule 12200, in the absence of a written arbitration agreement, FINRA members, such as Oppenheimer, are obligated to arbitrate disputes "requested by the customer" if the "dispute is between a customer and a member or associated person of a member" arising "in connection with the business activities of the member or the associated person." *Id.*

29.     The U.S. Court of Appeals for the Fourth Circuit has defined "customer" under FINRA Rule 12200 as one who "purchased any service or commodity from a FINRA member that the member sold in its course of business." *Raymond James Fin. Servs., Inc. v. Cary*, 709 F.3d 382, 387 (4th Cir. 2013).

## C.     <u>Cynthia Richardson</u>

30.     In the SOC, Ms. Richardson alleges that her "in-laws" (on information and belief, her mother- and father-in-law), Donovan Joe Murray and Amory Murray, "were longtime account holders of Oppenheimer." SOC at 3.

31.     Ms. Richardson alleges that Donovan Joe Murray and Amory Murray met with John Woods, though she does not allege when such alleged meeting occurred. *Id.*

32.     Ms. Richardson alleges that Donovan Joe Murray and Amory Murray invested in Horizon after meeting with John Woods. *Id.*

33.     Ms. Richardson alleges that Donovan Joe Murray's and Amory Murray's "Horizon investment was initially custodied by Horizon Private Equity." SOC at 3-4.

34.     On information and belief, Donovan Joe Murray died in or about January 2016.

35.     On information and belief, Donovan Joe Murray did not bring any claims concerning Horizon, against Oppenheimer or anyone else, during his lifetime.

7

36. On information and belief, no personal representative or collector of Donovan Joe Murray's estate brought any claims concerning Horizon, against Oppenheimer or anyone else, "within one year from his death." N.C. Gen. Stat. § 1-22.

37. On information and belief, Amory Murray began investing in Horizon in or about 2016.

38. On information and belief, Amory Murray made her Horizon investments through an Individual Retirement Account ("IRA") at a firm called Provident Trust.

39. Provident Trust is not affiliated or associated with Oppenheimer.

40. On information and belief, Amory Murray died in or about March 2020.

41. On information and belief, Amory Murray did not bring any claims concerning Horizon, against Oppenheimer or anyone else, during her lifetime.

42. On information and belief, no personal representative or collector of Amory Murray's estate brought any claims concerning Horizon, against Oppenheimer or anyone else, "within one year from [her] death." N.C. Gen. Stat. § 1-22.

43. On information and belief, Donovan Ray Murray and his sister, Kimberly Murray, were beneficiaries of Amory Murray's Provident Trust IRA.

44. On information and belief, upon Amory Murray's death, the assets in her Provident Trust IRA passed outside of probate to Donovan Ray Murray and Kimberly Murray.

45. On information and belief, Donovan Ray Murray became the owner of an inherited IRA at Provident Trust, which held his inherited portion of Amory Murray's Horizon investment.

46. Ms. Richardson alleges that "[e]ventually, [she] and her late husband, Donovan Ray Murray, had an account invested in Horizon Private Equity, in an amount over $250,000." SOC at 4.

47.     On information and belief, the entirety of Ms. Richardson's and/or Donovan Ray Murray's Horizon investment was inherited by Donovan Ray Murray from his mother, Amory Murray.

48.     Ms. Richardson alleges that her husband, Donovan Ray Murray, "passed away a few years ago." SOC at 3.

49.     On information and belief, Donovan Ray Murray died on or about May 14, 2022.

50.     On information and belief, Donovan Ray Murray did not bring any claims concerning Horizon, against Oppenheimer or anyone else, during his lifetime.

51.     On information and belief, no personal representative or collector of Donovan Ray Murray's estate brought any claims concerning Horizon, against Oppenheimer or anyone else, "within one year from his death." N.C. Gen. Stat. § 1-22.

52.     Ms. Richardson does not purport to bring the claims in the SOC as the personal representative or collector of any of the estates of Donovan Joe Murray, Amory Murray, Donovan Ray Murray, or anyone else.

53.     On information and belief, Ms. Richardson is not the "personal representative or collector" of Donovan Joe Murray's, Amory Murray's, or Donovan Ray Murray's estates.

54.     Ms. Richardson does not hold an account with Oppenheimer.

55.     Ms. Richardson has never held an account with Oppenheimer.

56.     Ms. Richardson has never executed any written agreement with Oppenheimer.

57.     Ms. Richardson never purchased any commodity from Oppenheimer.

58.     Ms. Richardson never purchased any service from Oppenheimer.

59.     Ms. Richardson never purchased any security from Oppenheimer.

60.     Ms. Richardson never delivered any funds to Oppenheimer for any purpose.

9

61.     Oppenheimer never sold anything to Ms. Richardson.

62.     On information and belief, Ms. Richardson never spoke with any Oppenheimer employee, representative, or associated person.

63.     Ms. Richardson is not a "customer" of Oppenheimer, as that term is defined under FINRA Rule 12200.

64.     Ms. Richardson never was a "customer" of Oppenheimer, as that term is defined under FINRA Rule 12200.

**D.      Kimberly Murray.**

65.     On information and belief, Ms. Murray is Donovan Ray Murray's sister.

66.     In the SOC, Ms. Murray alleges that she is the daughter of Amory Murray and Donovan Joe Murray.  SOC at 4.

67.     Consistent with Ms. Richardson's allegations, Ms. Murray alleges that Donovan Joe Murray and Amory Murray "were Oppenheimer customers and invested over $400,000 in Horizon Private Equity at the advising of Oppenheimer's registered representatives." *Id.*

68.     Ms. Murray alleges that she "was the beneficiary of Amory Murray's investment account." *Id.*

69.     On information and belief, upon Amory Murray's death, the assets in her Provident Trust IRA passed outside of probate to Kimberly Murray and Donovan Ray Murray.

70.     On information and belief, Ms. Murray became the owner of an inherited IRA at Provident Trust, which held her portion of Amory Murray's Horizon interest.

71.     On information and belief, the entirety of Ms. Murray's Horizon investment was inherited by Ms. Murray from her mother, Amory Murray.

72.     Ms. Murray does not purport to bring the claims in the SOC as the personal representative or collector of any of the estates of Donovan Joe Murray, Amory Murray, Donovan Ray Murray, or anyone else.

73.     On information and belief, Ms. Murray is not the "personal representative or collector" of Donovan Joe Murray's, Amory Murray's, or Donovan Ray Murray's estates.

74.     Ms. Murray does not hold an account with Oppenheimer.

75.     Ms. Murray has never held an account with Oppenheimer.

76.     Ms. Murray has never executed any written agreement with Oppenheimer.

77.     Ms. Murray never purchased any commodity from Oppenheimer.

78.     Ms. Murray never purchased any service from Oppenheimer.

79.     Ms. Murray never purchased any security from Oppenheimer.

80.     Ms. Murray never delivered any funds to Oppenheimer for any purpose.

81.     Oppenheimer never sold anything to Ms. Murray.

82.     On information and belief, Ms. Murray never spoke with any Oppenheimer employee, representative, or associated person.

83.     Ms. Murray is not a "customer" of Oppenheimer, as that term is defined under FINRA Rule 12200.

84.     Ms. Murray never was a "customer" of Oppenheimer, as that term is defined under FINRA Rule 12200.

**E.      Alexandra Eldridge Farmer.**

85.     In the SOC, Ms. Farmer alleges that she "had over $150,000 invested in Horizon Private Equity at the recommendation of Respondent's agent, which is now gone." SOC at 4.

86.     Ms. Farmer does not allege the identity of "Respondent's agent."

87.     On information and belief, Ms. Farmer's Horizon investment was held in an account at Provident Trust.

88.     Ms. Farmer also alleges that "[h]er mother, Rachel Eldridge, and her grandmother, Kathryn Pruett, both also invested in Horizon through Respondent and Woods, as well as through the Kathryn G. Pruett Personal Trust and the Pruett Family Trust." *Id.*

89.     Ms. Farmer does not allege that those investments are connected in any way to her own.

90.     Ms. Farmer does not purport to bring the claims in the SOC as the personal representative or collector of any of the estates of Rachel Eldridge, Kathryn Pruett, or anyone else.

91.     Ms. Farmer does not hold an account with Oppenheimer.

92.     Ms. Farmer has never held an account with Oppenheimer.

93.     Ms. Farmer has never executed any written agreement with Oppenheimer.

94.     Ms. Farmer never purchased any commodity from Oppenheimer.

95.     Ms. Farmer never purchased any service from Oppenheimer.

96.     Ms. Farmer never purchased any security from Oppenheimer.

97.     Ms. Farmer never delivered any funds to Oppenheimer for any purpose.

98.     Oppenheimer never sold anything to Ms. Farmer.

99.     On information and belief, Ms. Farmer never spoke with any Oppenheimer employee, representative, or associated person.

100.    Ms. Farmer is not a "customer" of Oppenheimer, as that term is defined under FINRA Rule 12200.

101.    Ms. Farmer never was a "customer" of Oppenheimer, as that term is defined under FINRA Rule 12200.

12

**F.** **Oppenheimer Will Suffer Harm If Forced to Arbitrate Defendants' Disputes**

102.    If Oppenheimer arbitrates Defendants' disputes, it will expend money and human resources in so doing.

103.    Oppenheimer has no recourse to recover such money or human resources.

104.    If Oppenheimer is forced to arbitrate Defendants' disputes, Oppenheimer will be deprived of the right to have these disputes adjudicated by a court of law.

**COUNT I**
**(DECLARATORY JUDGMENT THAT DEFENDANTS**
**ARE BARRED FROM ARBITRATING AGAINST OPPENHEIMER)**

105.    Oppenheimer repeats and re-alleges all preceding allegations as if fully set forth herein.

106.    As alleged herein, there is an actual and substantial justiciable controversy between the parties.

107.    There is no signed written agreement between Oppenheimer and any Defendant requiring arbitration of their disputes.

108.    There is no basis, including under FINRA Rules, to require Oppenheimer to arbitrate with Defendants because Defendants are not, and never were, customers of Oppenheimer.

109.    Accordingly, Oppenheimer has no obligation to arbitrate any claims that Defendants have or could have brought in the FINRA Arbitration.

110.    Declaratory relief is appropriate because the dispute between Oppenheimer and Defendants is definite and concrete, affecting the parties' adverse legal interests with sufficient immediacy.

13

111.    Oppenheimer, therefore, requests a declaratory judgment from this Court pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 that Oppenheimer has no obligation to arbitrate any claims that Defendants have or could have brought in the FINRA Arbitration.

### COUNT II
### (DECLARATORY JUDGMENT THAT MS. RICHARDSON AND MS. MURRAY ARE BARRED FROM BRINGING DECEDENTS' CLAIMS BECAUSE THEY LACK STANDING AND THE CLAIMS ARE TIME-BARRED)

112.    Oppenheimer repeats and re-alleges all preceding allegations as if fully set forth herein.

113.    As alleged herein, there is an actual and substantial justiciable controversy between the parties.

114.    All of the claims Ms. Richardson and Ms. Murray assert in the FINRA Arbitration are claims that appear to have belonged to one or more of Donovan Joe Murray, Amory Murray, or Donovan Ray Murray ("Decedents' Claims").[2]

115.    Any claims belonging to Donovan Joe Murray, Amory Murray, or Donovan Ray Murray expired, at the latest, one year after each of their deaths in 2016, 2020, and 2022, respectively.  *See* N.C. Gen. Stat. § 1-22 ("If a person entitled to bring an action dies before the expiration of the time limited for the commencement thereof, and the cause of action survives, an action may be commenced by his personal representative or collector after the expiration of that time, and within one year from his death").

---

[2] Because it is of no consequence to this matter, Oppenheimer does not here take any position whether any of these persons, in fact, had any viable claims.

14

116. Ms. Richardson and Ms. Murray commenced the FINRA Arbitration on or about October 3, 2024, much more than one year after the deaths of each of Donovan Joe Murray, Amory Murray, and Donovan Ray Murray.

117. Accordingly, the Decedents' Claims are time-barred. *See* N.C. Gen. Stat. § 1-22.

118. In addition, because neither Ms. Richardson nor Ms. Murray is the personal representative or collector of the estates of any of Donovan Joe Murray, Amory Murray, or Donovan Ray Murray, they lack standing to pursue the Decedents' Claims, even if they were not time-barred. *See* N.C. Gen. Stat. § 28A-18-1 ("Upon the death of any person, all demands whatsoever, and rights to prosecute or defend any action or special proceeding, existing in favor of or against such person, except as provided in subsection (b) hereof, shall survive to and against the personal representative or collector of the person's estate.").

119. Declaratory relief is appropriate because the disputes between Oppenheimer, on the one hand, and Ms. Richardson and Ms. Murray, on the other hand, are definite and concrete, affecting the parties' adverse legal interests with sufficient immediacy.

120. Oppenheimer, therefore, requests a declaratory judgment from this Court pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 that neither Ms. Richardson nor Ms. Murray have standing to pursue the Decedents' Claims and that the Decedents' Claims are time-barred.

## COUNT III
### (DECLARATORY JUDGMENT THAT CERTAIN OF DEFENDANTS' CLAIMS ARE TIME-BARRED)

121. Oppenheimer repeats and re-alleges all preceding allegations as if fully set forth herein.

15

122.    As alleged herein, there is an actual and substantial justiciable controversy between the parties.

123.    In the FINRA Arbitration, Defendants assert claims for, *inter alia*, breach of fiduciary duty, breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of North Carolina Blue Sky Laws.

124.    Assuming North Carolina law applies, the statute of limitation applicable to each of these causes of action is as follows:

| Cause of Action | Statute of Limitation |
|---|---|
| Breach of fiduciary duty | Three years.  N.C. Gen. Stat. § 1-52(1). |
| Breach of contract | Three years.  N.C. Gen. Stat. § 1-52(1). |
| Breach of implied covenant of good faith and fair dealing | Three years.  N.C. Gen. Stat. § 1-52(1). |
| North Carolina Blue Sky Laws | Even assuming fraudulent concealment, three years from discovery.  N.C. Gen. Stat. § 78A-56(f). |

125.    Defendants were on notice of their claims as of August 20, 2021, at the latest, as they allege in the SOC.

126.    Defendants commenced the FINRA Arbitration on or about October 3, 2024.

127.    October 3, 2024 is more than three years from August 20, 2021.

128.    Declaratory relief is appropriate because the dispute between Oppenheimer and Defendants is definite and concrete, affecting the parties' adverse legal interests with sufficient immediacy.

129.    Oppenheimer, therefore, requests a declaratory judgment from this Court pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 that any cause of action arising from Defendants' investments in Horizon to which a three-year statute of limitation applies are time-barred, including, but not limited to, Defendants' claims against Oppenheimer for breach of

16

fiduciary duty, breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of North Carolina Blue Sky Law.[3]

## COUNT IV
## (DECLARATORY JUDGMENT THAT DEFENDANTS ARE BARRED FROM BRINGING REGULATORY CLAIMS BECAUSE THEY LACK STANDING)

130.    Oppenheimer repeats and re-alleges all preceding allegations as if fully set forth herein.

131.    As alleged herein, there is an actual and substantial justiciable controversy between the parties.

132.    In the FINRA Arbitration, Defendants assert claims for violations of FINRA's supervision rules and FINRA Rule 2010 to "observe high standards of commercial honor and just and equitable principles of trade" (the "Regulatory Claims").

133.    There is no private right of action allowing private plaintiffs to pursue claims for violation of FINRA Rules. *See Smith v. INTL FCStone Fin., Inc.*, No. 2:19-CV-00235, 2020 WL 908437, at *4 (S.D.W. Va. Feb. 25, 2020) (holding that "FINRA itself provides no private right of action") (gathering authorities); *see also Parsons v. Hornblower & Weeks-Hemphill, Noyes*, 447 F. Supp. 482, 494 (M.D.N.C. 1977), *aff'd sub nom. Parsons v. Hornblower & Weeks-Hemphill, Noyes*, 571 F.2d 203 (4th Cir. 1978) (holding same for FINRA's predecessor, NASD).

134.    Declaratory relief is appropriate because the dispute between Oppenheimer and Defendants is definite and concrete, affecting the parties' adverse legal interests with sufficient immediacy.

---

[3] Oppenheimer does not concede that any other claims are timely.

PPAB 11854327v1

135.    Oppenheimer, therefore, requests a declaratory judgment from this Court pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 that there is no private right of action for violations of FINRA Rules and Defendants, therefore, have no standing to pursue the Regulatory Claims against Oppenheimer.

<u>**COUNT V**</u>
**(DECLARATORY JUDGMENT THAT DEFENDANTS ARE BARRED FROM BRINGING BREACH OF CONTRACT CLAIMS BECAUSE OPPENHEIMER IS NOT A PARTY TO ANY CONTRACT WITH DEFENDANTS)**

136.    Oppenheimer repeats and re-alleges all preceding allegations as if fully set forth herein.

137.    As alleged herein, there is an actual and substantial justiciable controversy between the parties.

138.    In the FINRA Arbitration, Defendants assert claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

139.    Oppenheimer is not a party to any contract with Defendants.

140.    A claim for breach of the implied covenant of good faith and fair dealing requires that the parties be in privity of contract. *See McClean v. Duke Univ.*, 376 F. Supp. 3d 585, 607 (M.D.N.C. 2019) ("Plaintiff's claim for breach of the implied covenant of good faith and fair dealing must also fail, because this covenant is implied only where a valid contract exists.").

141.    Declaratory relief is appropriate because the dispute between Oppenheimer and Defendants is definite and concrete, affecting the parties' adverse legal interests with sufficient immediacy.

142.    Oppenheimer, therefore, requests a declaratory judgment from this Court pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 that Oppenheimer is not a party to any

contract with any Defendant and, therefore, Defendants have no standing to pursue claims for breach of contract or breach of the implied covenant of good faith and fair dealing against Oppenheimer.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Oppenheimer respectfully requests:

A.      Entry of a declaratory judgment or judgments that Oppenheimer has no obligation to arbitrate any and all claims Defendants have or could have brought in the FINRA Arbitration;

B.      Entry of an order or orders preliminarily and permanently enjoining Ms. Richardson, Ms. Murray, and Ms. Farmer from arbitrating against Oppenheimer any and all claims they have or could have brought in the FINRA Arbitration;

C.      Entry of a declaratory judgment or judgments that neither Ms. Richardson nor Ms. Murray has standing to pursue the Decedents' Claims and that the Decedents' Claims are time-barred;

D.      Entry of a declaratory judgment or judgments that that there is no private right of action for violations of FINRA Rules and Defendants, therefore, have no standing to pursue such claims against Oppenheimer;

E.      Entry of a declaratory judgment or judgments that any cause of action arising from Defendants' investments in Horizon to which a three-year statute of limitation applies is time-barred, including, but not limited to, Defendants' claims against Oppenheimer for breach of fiduciary duty, breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of North Carolina Blue Sky Laws;

F.      Entry of a declaratory judgment or judgments that Oppenheimer is not a party to any contract with any Defendant and, therefore, Defendants have no standing to pursue claims for

breach of contract or breach of the implied covenant of good faith and fair dealing against Oppenheimer;

G.     Entry of an order or orders permanently enjoining:

     i.     Defendants from pursuing against Oppenheimer, in any venue, the Regulatory Claims; any cause of action arising from Defendants' investments in Horizon to which a three-year statute of limitation applies; and any claim based on breach of contract or breach of the implied covenant of good faith and fair dealing; and

     ii.     Ms. Richardson and Ms. Murray from pursuing against Oppenheimer, in any venue the Decedents' Claims;

H.     Entry of an award of Oppenheimer's attorneys' fees, costs, and disbursements incurred in this action; and

I.     Such other and further relief as the Court deems fair, just, and proper.

Dated:  January 6, 2025          Respectfully submitted,

                         */s/ Nicholas H. Lee*

**PARKER POE ADAMS & BERNSTEIN LLP**
Nicholas H. Lee, N.C. Bar No. 47885
620 South Tryon Street, Suite 800
Charlotte, North Carolina 28202
nicholaslee@parkerpoe.com
Telephone:  (704) 372-9000
Facsimile:  (704) 334-4706

Stephen V. Carey, N.C. Bar No. 52791
301 Fayetteville Street, Suite 1400
Raleigh, North Carolina 27604
stevecarey@parkerpoe.com
Telephone:  (919) 835-4011
Facsimile:  (919) 834-4564

20

**MORGAN, LEWIS & BOCKIUS LLP**
Matthew C. McDonough
(*pro hac vice* motion forthcoming)
One Federal Street
Boston, Massachusetts 02110
matthew.mcdonough@morganlewis.com
Telephone: (617) 951-8840

*Counsel for Plaintiff Oppenheimer & Co. Inc.*

21